IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>NINE THOUSAND SIX HUNDRED THIRTY DOLLARS ($9630.00) in United States Currency,<br><br>    Defendant,<br><br>EDUARDO MOCTEZUMA-SALINAS,<br><br>    Claimant. | ORDER GRANTING GOVERNMENT'S MOTION FOR SUMMARY JUDGMENT<br><br><br><br>Case No.2:05-cv-00334 |

Before the court is the government's motion for summary judgment on the issue of the potential forfeiture of $9,630.00. The government contends that it has met its burden of showing by a preponderance of the evidence that the defendant currency is proceeds of illegal drug activity because (1) the currency was found in a safe with coffee grounds; (2) an ion scan detected cocaine on the currency; (3) one bill within the defendant currency was used in controlled buys with Eduardo Moctezuma-Salinas for the purchase of cocaine; and (4) Claimant Moctezuma refused to answer interrogatories regarding the origin of the currency. Moctezuma contends that summary judgment is inappropriate because a large percent of U.S. currency has been contaminated by illegal drugs, and the fact that one bill had previously been involved in a

criminal action does not demonstrate a substantial connection between the remaining bills and a criminal offense.  Moreover, Moctezuma argues that the government failed to show how the existence of coffee in the safe is significant to this case.  Lastly, Moctezuma motions the court under *Daubert* to strike any reference to an ion scan in this case.

The court finds that, even in the absence of any ion scan evidence, the government has shown by a preponderance of the evidence that the defendant currency is proceeds of an illegal drug transaction or was intended to be used to facilitate such transactions, and the claimant has failed to raise an issue of disputed material fact that would preclude summary judgment in this case.  The totality of the circumstances of this case leads to only one reasonable conclusion – the defendant currency is substantially connected to illegal drug activity.  Accordingly, the court GRANTS the government's motion for summary judgment.

## BACKGROUND

The court notes that in his memorandum in opposition to the government's motion for summary judgment, Moctezuma fails to address most of the facts of the case presented by the government.  Consequently, the court relies heavily on the government's presentation of facts.  The court, however, takes special note of those facts disputed by Moctezuma.

At issue in this case is the government's seizure of $9,630.00 in United States currency at the residence of Eduardo Moctezuma-Salinas and his girlfriend, Rosa Isela Biviano-Noyola.  The currency was seized during the execution of a search warrant on April 13, 2004.  During the search of the residence, the searching officers found a gray metal safe in Biviano's bedroom.  The $9,630.00 in United States currency, along with some coffee grounds, were found within the safe.  Biviano stated that the safe and money belonged to Moctezuma.

Officers seized the currency as proceeds of the distribution of controlled substances. An ion scan of the currency tested positive for the presence of cocaine. However, it is unclear how many bills were tested, when the bills were tested, who tested the bills, and what process was used.

The currency was also compared to prior official authorized funds used during the investigation for controlled buys involving Moctezuma. Investigating agents found a one hundred dollar bill within the seized currency, which had been used for a April 1, 2004 buy of illegal drugs.

During the course of the government's investigation, Moctezuma sold cocaine to an undercover officer on five occasions and arranged the sale of methamphetamine to an undercover officer on two occasions.

On April 21, 2004, a Grand Jury charged Moctezuma with knowingly and intentionally distributing cocaine in violation of 21 U.S.C. § 841(a)(1). Moctezuma pled guilty to five counts of knowingly and intentionally distributing cocaine on March 1, 2005. Moctezuma's appeal to the Tenth Circuit was denied on January 12, 2006.

On April 11, 2005, the United States, pursuant to 21 U.S.C. § 881(a)(6), filed its complaint for forfeiture. Moctezuma filed a claim to the currency on April 25, 2005. On September 1, 2006, the government mailed its First Set of Interrogatories to Moctezuma's attorney. On October 11, 2006, Moctezuma's attorney faxed a response to the First Set of Interrogatories in which Moctezuma asserted the Fifth Amendment and refused to answer any of the government's questions regarding the origin and purpose of the defendant currency.

On June 4, 2007, the government motioned the court for summary judgment.

## STANDARD OF REVIEW

The court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[1]  In determining the appropriateness of summary judgment, the court must "view the evidence, and draw reasonable inferences therefrom, in the light most favorable to the non-moving party."[2]  However, "[t]he mere existence of a scintilla of evidence in support of the [defendant's] position will be insufficient [to overcome a motion for summary judgment]; there must be evidence on which the jury could reasonably find for the [defendant]."[3]

## DISCUSSION

This court must determine whether the $9,630.00 seized by the government on April 13, 2004, is subject to forfeiture.  The civil forfeiture provision of the Controlled Substances Act provides for the forfeiture of:

> All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter.[4]

Consequently, the $9,630.00 is subject to forfeiture if it is proceeds of an illegal drug transaction or was intended to be used to facilitate such an illegal transaction. "In a suit or action brought

---

[1] Fed. R. Civ. P. 56(c).

[2] *Combs v. PriceWaterhouse Coopers, LLP*, 382 F.3d 1196, 1199 (10th Cir. 2004).

[3] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

[4] 21 U.S.C. § 881(a)(6).

under any civil forfeiture statute for the civil forfeiture of any property . . . the burden of proof is on the Government to establish, by a preponderance of the evidence, that property is subject to forfeiture . . . ."[5]  The government must establish "that there was a substantial connection between the property and the offense."[6]

The government asserts that summary judgment in its favor is appropriate because (1) the currency was found in a safe with coffee grounds; (2) an ion scan detected cocaine on the currency; (3) one bill within the defendant currency was used in controlled buys with Moctezuma for the purchase illegal drugs; and (4) Moctezuma refused to answer interrogatories regarding the currency.  Moctezuma argues that not only has a large percent of U.S. currency been contaminated by illegal drugs, but any reference to an ion scan in this case should be stricken under *Daubert*.  Furthermore, Moctezuma argues that the tracing of one bill to an illegal drug buy does not demonstrate a substantial connection between the remaining bills and illegal drug transactions.  Lastly, Moctezuma argues that the government failed to show how the existence of coffee in the safe is significant to this case.

   A.  The Coffee Grounds

It is undisputed that coffee grounds were found in the safe with the $9,630.00.[7]  However, Moctezuma contends that the government has failed to show how the coffee plays any meaningful role in the matter.  In its reply, the government asks the court to take judicial notice that masking agents such as coffee grounds have been widely and extensively used by drug

---

[5] 18 U.S.C. § 983(c)(1).

[6] *Id.* at § 983(c)(3).

[7] Pl.'s Mem. Supp. Summ. J. 2.

dealers to hide the scents of drugs.

The court takes judicial notice that masking agents such as coffee grounds have been used by drug dealers to hide the odors of drugs. Specifically, the court notes that it is "common for coffee grounds to be used to mask the smell of crack cocaine."[8] The court also notes the irregularity of storing a household kitchen item like coffee grounds in a safe along with cash unless the individual was attempting to hide odors of drugs. Although alone not sufficient to show that the defendant currency is illegal drugs proceeds, the court finds that the presence of coffee grounds in the safe is a significant factor in showing a substantial connection between the defendant currency and illegal drug transactions.

   B.  *The Ion Scan*

Moctezuma does not contest the fact that an ion scan of the defendant currency resulted in a "positive" test for the presence of cocaine. However, Moctezuma motions the court to strike references to the ion scan under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*[9] because there is "only a vague reference to a 'positive' test, but nothing regarding quantity, time or possible cross contamination, nor the exact processes used with regard to the test."[10] Moreover, Moctezuma notes that the government has presented no evidence as to the circumstances of the testing or how many bills were tested. The government has failed to address Moctezuma's *Daubert* challenges to the ion scan.

---

[8] *United States v. $22,991.00, more or less in U.S. Currency*, 227 F. Supp. 2d 1220, 1224 (S.D. Ala. 2002).

[9] 509 U.S. 579 (1993).

[10] Def.'s Mem. Opp. Summ. J. 6.

Under many circumstances, the court would request briefing on this issue to determine whether evidence of the ion scan should be stricken. However, because the totality of circumstances, even in the absence of any ion scan evidence, leads to only one reasonable conclusion, the court strikes any references to the ion scan and relies on the other evidence properly presented by the government.

*C. Controlled buy connection*

The government has submitted evidence of a one-hundred dollar bill within the defendant currency that was used by Moctezuma in a controlled drug buy.[11] Moctezuma argues that the apparent connection between one bill and a drug transaction does not establish a substantial connection between the remaining property and the offense. Moctezuma contends that the logical inference is that the other bills came from another source.

The court finds that the one-hundred dollar bill not only demonstrates a substantial connection between that bill and a drug transaction, but also serves as evidence that the other bills in the safe were connected to a drug transaction – especially in light of the other evidence presented in this case. Although it may be proper to infer that the other bills were not involved in the April 1, 2004 drug buy, inferring that the other bills were not substantially connected to another drug transaction would be misguided giving the totality of the circumstances. In addition to the evidence already discussed, Moctezuma pleaded guilty to *five* counts of knowingly and intentionally distributing cocaine.[12] It is also undisputed that Moctezuma arranged the sale of methamphetamine to an undercover officer on two occasions. Furthermore, and as will be

---

[11] *See* Verified Compl. ¶ A-4, Pl.'s Mem. Supp. Summ. J. Ex. A.

[12] *United States v. Eduardo Moctezuma-Salinas*, Case No. 2:04-CR-252.

discussed below, Moctezuma refused to answer questions regarding the origin and purpose of the defendant currency.

The matched one-hundred dollar bill provides evidence of a substantial connection between the defendant currency and an illegal drug transaction. Much like the other evidence provided by the government, this evidence of a matched bill alone is insufficient to prove a substantial connection by a preponderance of the evidence. However, viewing this evidence in combination with the other evidence, the court finds that the defendant currency was used or was intended to be used in illegal drug transactions.

*D. Moctezuma's failure to respond to the interrogatories warrants an adverse inference*

The government argues that Moctezuma's failure to respond to interrogatories regarding the origin of the defendant currency warrants an adverse inference by the court. It is undisputed that Moctezuma invoked his right not to incriminate himself under the Fifth Amendment when he refused to answer any questions regarding the origin or purpose of the defendant currency. In his opposition memorandum, however, Moctezuma failed to address the government's position that this refusal warrants an adverse inference by the court.

It is axiomatic that a defendant's decision to invoke the Fifth Amendment cannot be held against that individual in a criminal case. However, in most civil cases, a court may draw an adverse inference from an individual's refusal to testify under the Fifth Amendment.[13] Although courts have treated a defendant's invocation of the Fifth Amendment under the "criminal rules"

---

[13] *See Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976).

in some civil forfeiture cases[14]– meaning that the court could not draw an adverse inference from the defendant's refusal to testify – such courts have done so only where the "forfeiture statute had made the culpability of the owner relevant or where the owner faced the possibility of subsequent criminal proceedings."[15]  This case does not fit into that category because the forfeiture statute at issue, 21 U.S.C. § 881, is not predicated on the culpability of any defendant,[16] and there is no evidence that Moctezuma faces the possibility of subsequent criminal proceedings.  Consequently, this case is a civil action for purposes of the Fifth Amendment and this court can draw an adverse inference from the claimant's refusal to answer questions.

The court finds it appropriate to draw an adverse inference from Moctezuma's refusal to answer questions regarding the origin and purpose of the defendant currency.  Not only did Moctezuma fail to respond to questions regarding the origin and purpose of the defendant currency, but he has also failed to provide any affirmative evidence, at any time, that he is an "innocent owner" of the defendant currency.  Moctezuma attempts to avoid summary judgment by attacking some of the government's evidence.  Moctezuma, however, has failed to raise an issue of material fact that would preclude summary judgment in this case.

## CONCLUSION

For the reasons stated above, the court GRANTS the government's motion for summary judgment.  The Clerk's Office is directed to close this case.

---

[14] *See, e.g., United States v. United States Coin & Currency*, 401 U.S. 715, 721-22 (1971).

[15] *Austin v. United States*, 509 U.S. 602, 608 (1993).

[16] *United States v. $141,770.00 in United States Currency*, 157 F.3d 600, 607 n. 5 (8th Cir. 1998).

SO ORDERED.

DATED this 31st day of August, 2007.

BY THE COURT:

*(signature)*

Paul G. Cassell
United States District Judge